ROGERS, Circuit Judge.
Niranjan Lai obtained a judgment that U.S. Life wrongfully refused to pay him disability benefits under an insurance contract. U.S. Life appeals, claiming that coverage under the contract terminated when Michigan briefly suspended Lai’s license to practice medicine several years before the onset of Lai’s disability. Because that conclusion is required by the most natural reading of the contract, judgment for Lai was not warranted.
I.
Lai, a nephrologist (kidney doctor), is a citizen of Michigan. U.S. Life is a New York corporation with principal place of business in New York. Lai’s membership in the AMA made him eligible for a disability insurance policy underwritten by U.S. Life, under which coverage began in 1983. The insurance policy required U.S. Life to pay income replacement benefits if Lai became disabled while the policy was in force.
The policy provided that coverage would end “upon the suspension or revocation in any state of [Lai’s] license to practice medicine as a result of a criminal act, ethical violation, or gross malpractice.... ” The insurance contract also stated that it was governed by Illinois law.
In April 1996, Michigan police received a tip that Lai might be wrongfully prescribing painkillers. Throughout the remainder of 1996 an undercover officer posed as a patient and repeatedly requested that Lai give him prescriptions for Vicodin. By the time Lai finally refused to continue prescribing Vicodin for the undercover officer in December, Lai had written prescriptions for a total of 500 Vicodin pills, notwithstanding statements from the undercover officer such as that the officer *146 “just wanted to get some more Vicodin,” that his pain was gone but he “just liked having [the Vicodin] around,” and even that the officer was selling the drug for $5 per pill.
On March 27, 1997, Michigan’s Department of Consumer & Industry Services, Board of Medicine and Disciplinary Subcommittee ordered that Lai’s license to practice medicine in Michigan be summarily suspended. The order was to take effect “commencing the date [it was] served upon” Lai. Shortly after service of the order on March 81, Lai petitioned for and received an order from the county circuit court that stayed the suspension order subject to limits on Lai’s ability to prescribe narcotics.
Michigan pursued criminal charges, and eventually obtained a jury verdict against Lai for “three counts of delivery of a prescription form” and a sentence of eighteen months of probation. The conviction occurred in March 1999; the Michigan Court of Appeals affirmed in November 2000.
After Lai’s conviction, the Michigan medical regulatory establishment conducted various administrative proceedings. Eventually, on January 17, 2003, the Michigan Board of Medicine Disciplinary Subcommittee issued an order that fined Lai $5000 and suspended his license to practice medicine for six months and one day, effective 30 days after the order was signed. This suspension took effect on February 16, 2003. The medical licensing board restored Lai’s license on October 9, 2003.
Meanwhile, Lai’s chronic pancreatitis worsened. Serious attacks sent him to hospital emergency rooms in 1999, 2000, and 2001. Lai testified that his pancreati-tis was under control from 2001 until early 2003. But in January 2003 his condition took a turn for the worse, and at the beginning of February his condition became so bad that he ceased working. Lai’s physician found that Lai was disabled from practicing medicine as of February 4, 2003.
Lai filed for disability benefits under his insurance contract with U.S. Life. U.S. Life concluded that coverage had terminated because of the 1997 suspension and refused to pay, though it did refund the premiums Lai had paid for coverage since 1997.
Lai filed a two-count complaint against U.S. Life in Michigan court. Lai claimed that U.S. Life breached the insurance contract by withholding payment for his valid claim of disability and that its failure to pay violated Michigan’s Uniform Trade Practices Act. U.S. Life removed in December 2005. In December 2006, the district court denied U.S. Life’s motion for summary judgment and found that as a matter of law Lai’s license to practice medicine was first suspended so as to terminate the insurance contract on February 16, 2003, rather than in 1997.
The district court conducted a bench trial in June 2007. The court concluded that Lai became unable to work as a physician as of February 4, 2003. The court further found that U.S. Life breached its contract because Lai met all necessary conditions under the policy, including that he was under the regular care of a physician for his disability. The court held that U.S. Life was not liable under the Michigan Uniform Trade Practice Act because, under then-governing precedent, claims “reasonably in dispute” were not subject to the 12% interest penalty provided by that Act for late payment.
Lai appeals, claiming that a subsequent change in Michigan law requires that he receive a 12% interest rate on his judgment. U.S. Life also appeals, claiming that Lai was not under the regular care of a physician for his disability as the con *147 tract requires, and that the contract terminated in 1997 when Michigan suspended Lai’s license. The last issue is dispositive.
II.
The 1997 suspension of Lai’s license, though short-lived, was sufficient to trigger the termination clause in the contract and thus requires judgment for U.S. Life.
The contract term at issue provides that coverage ends “upon the suspension or revocation in any state of [Lai’s] license to practice medicine as a result of a criminal act, ethical violation, or gross malpractice .... ”
The 1997 suspension went into effect after Lai received service of the order of summary suspension on March 81, 1997. Later that day, the state circuit court entered an order:
Ex Parte Order Staying the Order of Summary Suspension
This matter having come before the Court on a Petition for Ex Parte Order to Stay the Order of Summary Suspension and the Court having been fully advised in the premises, IT IS HEREBY ORDERED as follows:
The Order of Summary Suspension filed in the above captioned matter on March 27, 1997, bearing Complaint Number 43 97 0316 00 is hereby stayed until April H, 1997 at 1:30 p.m. heaving on this petition. Petitioner shall not prescribe any narcotic or pain medicine, [italicized material handwritten]
All further proceedings until 2003 did not result in the suspension of Lai’s license. Such proceedings as occurred in other agencies do not shed light on the legal reasoning behind the circuit court order.
The unambiguous language of the contract said that Lai’s contract terminated once his license was suspended for ethical violations. Nothing in the language suggests that an extremely short period of suspension is not sufficient to trigger termination.
Lai does not argue that the contract language is ambiguous, though if the language were ambiguous it would be interpreted in his favor. See Aurelius v. State Farm Fire & Cas. Co., 384 Ill.App.3d 969, 323 Ill.Dec. 739, 894 N.E.2d 765, 769 (2008). Rather, Lai argues that the language is unambiguous in his favor. But Lai’s claim that the state merely “took action” to suspend his license in 1997 rather than “suspending” it cannot be reconciled with the unambiguous meaning of those terms, particularly given that the contract refers to both suspension and revocation. Lai’s argument implies that only revocation would terminate coverage, a position not reconcilable with the language of the contract.
Lai argues that the provision should be read as not immediately terminating coverage if the state suspends a license wrongfully or without legal justification. But whether or not such a liberal reading is warranted, in this case Lai had committed ethical and criminal violations before the 1997 suspension. The only thing that suggests that the 1997 suspension was improper is the state court’s stay of that suspension — but that court did not provide its reasoning in staying the suspension, and the record as a whole provides no reason to conclude that the state acted wrongfully by suspending Lai’s license in 1997.
In refusing U.S. Life’s motion for summary judgment below, the district court evidently concluded that the state court stayed the suspension nunc pro tunc, effectively “unsuspending” Lai retroactively for the few hours between the suspension taking effect and the entry of the stay. But *148 the order did not explicitly say that it acted retroactively and gave no reason to assume that it so acted. Even if the court were to have issued its order with the intent of retroactively shielding any unlicensed practice of medicine Lai may have committed on March 31, it is hardly clear that the court could ex parte reinstate Lai’s coverage with U.S. Life in contravention of the terms of his contract.
Because coverage terminated once the state suspended Lai’s license, the district court should have granted summary judgment to U.S. Life. The remaining issues raised on appeal and cross-appeal are therefore moot.
III.
For these reasons, we reverse the judgment of the district court.